

$400

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW R. PERRONG<br>1657 The Fairway #131 Jenkintown, PA 19046 ) ) ) ) | |
| Plaintiff, )<br>vs. ) | Civil Action<br>No._____ **18    0626** |
| ) | |
| CHOICE ENERGY, LLC )<br>d.b.a. "4 Choice Energy (LLC)" )<br>1031 OFFICE PARK RD )<br>WEST DES MOINES, IA, 50265, ) | |
| ) | |
| MICHAEL JOSEPH NEEDHAM, )<br>Individually and as Principal of CEL, )<br>29101 WOODLAND HILLS DR, )<br>DALLAS CENTER, IA 50063, ) | |
| ) | |
| MOSES K. CHEUNG, )<br>Individually and as Principal of CEL, )<br>50 TILTON DRIVE, )<br>FREEHOLD, NJ 07728, ) | |
| ) | |
| BRENT ALLEN HOOD, )<br>Individually and as Principal of CEL, )<br>7324 NW 86TH ST, )<br>JOHNSTON, IA 50131, ) | |
| ) | |
| RICHARD MICHAEL BALDARAMOS, )<br>Individually and as Principal of CEL, )<br>370 TUSCARORA RD, )<br>CRYSTAL BAY, NV 89402, ) | |
| ) | |
| And )<br>DOES 1 through 100, inclusive, ) | |
| ) | |
| Defendants. ) | **Jury Trial Demanded** |

Plaintiff ANDREW R. PERRONG brings this action for damages, restitution,

reinstatement, statutory damages, punitive damages, sanctions, interest, court costs, and

1

injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64

for the *ultra vires* illegal actions and deliberate and knowing tortious activity of CHOICE

ENERGY, LLC ("CEL"), MICHAEL JOSEPH NEEDHAM, Individually and as Principal of

CEL ("NEEDHAM"), MOSES K. CHEUNG, Individually and as Principal of CEL

("CHEUNG"), BRENT ALLEN HOOD, Individually and as Principal of CEL ("HOOD"),

RICHARD MICHAEL BALDARAMOS, Individually and as Principal of CEL

("BALDARAMOS"), and Does 1 through 100, inclusive, in negligently and/or willfully

contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls"), by utilization of an

automatic telephone dialing system ("ATDS Calls") and call abandonment in violation of the

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of

the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as

follows:

## I.     **Introduction**

1.   Defendant CHOICE ENERGY, LLC ("CEL") is a company located and domestically

incorporated in the State of Iowa that markets and sells, *inter alia,* alternative electric supply

services to individuals throughout Pennsylvania and other states in the US. CEL is licensed by

the Pennsylvania Public Utilities Commission under license number A-2012-2337893. CEL does

business under the name 4 Choice Energy, (LLC). Its principal mailing address and address for

service of process is located at 1031 OFFICE PARK RD WEST DES MOINES, IA, 50265.

2.   Plaintiff brings this action to challenge the Company's practices in the telephone

solicitation of its products and services. Specifically, Plaintiff challenges Company's and

Company's agents' illegal telephone solicitations by which it markets its products and services,

2

illegal Calls made using an automatic telephone dialing system, illegal call abandonment, and failure to maintain a Do-Not-Call policy or list in connection therewith.

3. All of the claims asserted herein arise out of Company's illegal telephone solicitation campaign and are a common fact pattern. In fact, Plaintiff notes that this is at least the second lawsuit that has been filed against Company, and that Company is the subject of a complaint by the Pennsylvania Public Utility Commission, under docket C-2016-2581006.

## II.  **Jurisdiction and Venue**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County, which lies within this judicial district, pursuant to 28 U.S.C. §118. Plaintiff received the phone calls to a 215-area code number, registered in this judicial district. Each of the Defendants has sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent… ; it occurred when the [facsimile] was received."

## III.  **Parties**

6. Plaintiff ANDREW PERRONG ("Plaintiff") is an individual who received the alleged phone calls on his private telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who may be mailed at 1657 The Fairway #131 Jenkintown, PA 19046.

3

7.  Defendant CHOICE ENERGY, LLC ("CEL"), is a company located in Iowa, and transacts business in, *inter alia*, Montgomery County. CEL markets and sells, *inter alia,* alternative electric supply services to individuals throughout Pennsylvania and other states in the US. CEL is licensed by the Pennsylvania Public Utilities Commission under license number A-2012-2337893. CEL does business under the name 4 Choice Energy, (LLC). Its principal mailing address and address for service of process is located at 1031 OFFICE PARK RD WEST DES MOINES, IA, 50265.

8.  Defendant MICHAEL JOSEPH NEEDHAM ("NEEDHAM") is an adult individual who is the Primary Managing Member / Principal of CEL, and upon information and belief CEL's Primary Owner. NEEDHAM is an adult individual, and citizen of the United States. As Principal of CEL, NEEDHAM is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Companies' name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, Iowa, and nationwide.

9.  Defendant MOSES K. CHEUNG ("CHEUNG") is an adult individual who is the Co-Managing Member / Principal of CEL, and upon information and belief CEL's Co-Owner. CHEUNG is an adult individual, and citizen of the United States. As Principal of CEL, CHEUNG is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Companies' name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, New Jersey, Iowa, and nationwide.

10. Defendant BRENT ALLEN HOOD ("HOOD") is an adult individual who is the

4

Co-Managing Member / Principal of CEL, and upon information and belief CEL's Secondary Owner. HOOD, upon information and belief, plays a special role in directing the illegal telemarketing scheme more fully described herein as the director of Marketing & Sales, along with NEEDHAM. HOOD is an adult individual, and citizen of the United States. As Principal of CEL, HOOD is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Companies' name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, Iowa, and nationwide.

11. Defendant RICHARD MICHAEL BALDARAMOS ("BALDARAMOS") is an adult individual who is the Co-Managing Member / Secretary, Treasurer, and Principal of CEL, and upon information and belief CEL's Secondary Owner. BALDARAMOS is an adult individual, and citizen of the United States. As Principal of CEL, BALDARAMOS is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Companies' name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, Iowa, and nationwide.

12. Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as Does 1 through 100, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

13. At all times herein mentioned, CEL, NEEDHAM, CHEUNG, HOOD, BALDRAMOS, and the Doe Defendants, (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of

5

the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

14. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

15. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

16. The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.

17. Under the TCPA, an individual such as NEEDHAM, CHEUNG, HOOD, or BALDARAMOS may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217, the Communications Act of 1934, as amended, of which the TCPA is a part, which reads, *inter alia*: "[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" 47 U.S.C. § 217 (emphasis added).

6

18. When considering individual officer liability, other Courts have agreed that a Corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See*, e.g., *Jackson v. Five Star Catering, Inc., v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013), which stated that "[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *See also Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011), stating that "If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."

19. Defendants NEEDHAM, CHEUNG, HOOD, and BALDARAMOS are personally liable under the "participation theory" of liability because they are the Principal owners and controlling officers of Company, knew of Company's violations, and directed employees and/or agents of Company to continue making those violations. This is because NEEDHAM, CHEUNG, HOOD, and BALDARAMOS authorized and oversaw each of Company's telemarketing processes. Furthermore, NEEDHAM, CHEUNG, HOOD, and BALDARAMOS are also personally liable because they were responsible for ensuring Company's employees' TCPA compliance, as well as those of Company's vendors.

## IV.    **Factual Allegations**

20. In or about November 22nd, 2017, Plaintiff received the first of multiple calls made using an automatic telephone dialing system ("ATDS") by Defendants and/or their agents at Plaintiff's personal VOIP telephone number for which he is charged for the call, 215-725-1530.

7

Plaintiff had not consented to this solicitation, and Plaintiff's telephone number was on the Federal Do-Not-Call Registry.

21. In total, between November 22 and the filing of this complaint, Plaintiff received 19 calls made using an automatic telephone dialing system ("ATDS") from Defendants. 15 of these calls were "abandoned" further contributing to the proof that these calls were calls made using an automatic telephone dialing system.

22. Plaintiff received two calls on November 22 with the caller ID Name "Cust Serv 4 Ene" and the caller ID number 215-709-0211, which, when called back, goes to a recording for Choice Energy and prompts the caller to wait to speak with a Choice Energy representative. Plaintiff, however, missed these two calls. These calls did not leave a message stating the name of the caller, as required under federal law, and were therefore "abandoned" calls made using an automatic telephone dialing system to a number on the Federal Do-Not-Call Registry.

23. On November 29, Plaintiff received one call from 610-347-9758, which, when called back, plays a recording for Choice Energy. Plaintiff, too, did not get a chance to answer this call. This call did not leave a message stating the name of the caller, as required under federal law, and was therefore an "abandoned" ATDS call to a number on the Federal Do-Not-Call Registry.

24. On November 30, Plaintiff received two calls from 610-750-9858, and the same caller ID name, "Cust Serv 4 Ene" Plaintiff answered the first call, placed at 1:39 PM, but received no response. Such behavior is characteristic of an automatic dialer, and is termed illegal call abandonment. Often, such automatic dialers, either because they misidentify the caller as no voice on the line, or because there are not enough agents available to answer the call, will "abandon" the call, in addition to the reasons previously mentioned. During this call, Plaintiff said "hello" several times and was connected for a total of 11 seconds, according to telephone

8

company records. Plaintiff received a subsequent call with the same caller ID information at approximately 4:42 PM on that day, but was unable to answer it. This call did not leave a message stating the name of the caller, as required under federal law, and was therefore an "abandoned" ATDS call to a number on the Federal Do-Not-Call Registry.

25. Plaintiff finally spoke to a representative on December 1, 2017. That call came in from the same caller ID as the previous ones, 610-750-9858. This call was placed using an Automatic Telephone Dialing System, since Plaintiff said "hello" multiple times and heard faint machine noise before the call was connected to the human being representative that answered. During that call, Plaintiff spoke to a representative, who confirmed they were calling multiple times from Choice Energy. During that call, Plaintiff requested to be placed on Company's do-not-call list, and be provided a copy of Company's do-not-call policy, but was verbally abused and hung up on.

26. The onslaught of calls continued with two calls on December 4, 2017. These calls came in from the same caller ID as the previous ones, 610-750-9858. The first call, which Plaintiff was unable to answer, came in at 11:54 AM. This call did not leave a message stating the name of the caller, as required under federal law, and was therefore an "abandoned" ATDS call to a number on the Federal Do-Not-Call Registry. Plaintiff answered the second call that day at 5:11 PM, but received no response. Such behavior is characteristic of an automatic dialer, and is termed illegal call abandonment. Often, such automatic dialers, either because they misidentify the caller as no voice on the line, or because there are not enough agents available to answer the call, will "abandon" the call. During this call, Plaintiff said hello several times and was connected for a total of 5 seconds, according to telephone company records.

27. Plaintiff received another 3 calls, one on December 5th and two on December 6th. This

9

time, the calls came from a new caller ID 717-308-9490, but had the same caller ID name, "Cust Serv 4 Ene." When called, this caller goes to a recording for Choice Energy and prompts the caller to wait to speak with a Choice Energy representative. Plaintiff, however, missed these three calls. These calls did not leave a message stating the name of the caller, as required under federal law, and were therefore "abandoned" calls made using an automatic telephone dialing system to a number on the Federal Do-Not-Call Registry.

28. Plaintiff received another call on December 7, 2017. This time, the call came from the caller ID 215-709-0211, as the first call. Plaintiff answered the call that day at 1:13 PM, but received no response. Such behavior is characteristic of an automatic dialer, and is termed illegal call abandonment. Often, such automatic dialers, either because they misidentify the caller as no voice on the line, or because there are not enough agents available to answer the call, will "abandon" the call. During this call, Plaintiff said hello several times and was connected for a total of 11 seconds, according to telephone company records.

29. Plaintiff received another two calls on December 8, 2017. This time, the calls came from the caller ID 215-709-0211, as the first call. Plaintiff answered the call that day at 10:34 AM, and was connected to an agent who confirmed they were calling from Choice Energy. This call was placed using an Automatic Telephone Dialing System, since Plaintiff said "hello" multiple times and heard faint machine noise before the call was connected to the human being representative that answered. Perhaps realizing the illegal nature of the call, the caller disconnected the call after being on the line with Plaintiff for 16 seconds. Despite this, Choice energy again called at 3:38 PM that day. Plaintiff did not get a chance to answer this call.  This call did not leave a message stating the name of the caller, as required under federal law, and was therefore an "abandoned" ATDS call to a number on the Federal Do-Not-Call Registry.

10

30. Plaintiff continued to get barraged with calls on December 11, 2017, from the caller
ID 215-709-0211. Plaintiff did not get a chance to answer this call.  This call did not leave a
message stating the name of the caller, as required under federal law, and was therefore an
"abandoned" ATDS call to a number on the Federal Do-Not-Call Registry.

31. Finally, Plaintiff had enough of the calls. Choice Energy placed 4 calls to Plaintiff on
December 12, 2017, 3 with the caller ID 610-347-9758, and with the same caller ID name "Cust
Serv 4 Ene". When called, this caller goes to a recording for Choice Energy and prompts the
caller to wait to speak with a Choice Energy representative. These calls were placed using an
Automatic Telephone Dialing System, since Plaintiff said "hello" multiple times and heard faint
machine noise before the call was connected to the human being representative that answered.
During that call, Plaintiff feigned interest to the caller in an effort to fully ascertain and make
absolutely certain that a *Pennsylvania Licensed Electric Supplier,* who should know better than
to flagrantly, knowingly, and willfully violate the law, a *public utility,* who should be held to
*high ethical and legal standards,* was the actual caller behind the call and not some impostor.
Plaintiff provided a fake account number to the caller, and was transferred to the telephone
verification system to complete the process of switching the electric provider of his bogus
account number to Company. That telephone verification system, which *confirmed* the caller was
Choice Energy, gave a callback number of 888-565-4490, the *same number* that Choice Energy
has on their website. After obtaining this information, Plaintiff disconnected the call. Plaintiff
then *kept getting calls* from the same number, one which plaintiff did not answer and which did
not leave a message. Plaintiff answered the third call that day, which was an ATDS call, since it
took a while to connect to a representative and played a machine noise to Plaintiff, and Plaintiff

11

completed the phone verification on the third call Choice Energy made to Plaintiff that day, in order to establish a record and paper trail for Choice Energy's investigation.

32. Plaintiff then summarily sent an e-mail to the customer service department and the NEEDHAM, CHEUNG, and HOOD defendants, requesting more information about the calls so far mentioned and requesting to be placed on Company's do-not-call list and receive a copy of Company's do-not-call policy.

33. As a result of that e-mail, Plaintiff received a call from "Sam" at customer service for Choice Energy. During that call, Plaintiff was told that "I see a couple of calls made to you, that's for sure, starting around December 1st." Sam had indicated that Choice Energy would place Plaintiff on Choice Energy's do-not-call list, and apologized about the "high volume of calls." This statement constituted an *affirmative admission* by Choice Energy that they *knowingly, willfully, and flagrantly* violated the law, as more fully outlined above. After Plaintiff pointed this fact out, and asked if "Sam" just made an admission that Choice Energy made the calls, "Sam" hesitated for a little, got belligerent, defensive, and obscene with Plaintiff, and then disconnected the call.

34. Despite "Sam's" admission and assertions that Plaintiff would be placed on Choice Energy's do-not-call list, Plaintiff received one final "salvo" call from Choice Energy, an ultimate affront to Plaintiff's rights under the TCPA, and proof that Choice Energy could care less about violating the TCPA, even after all that Plaintiff had been through, this time from the caller ID name "Choice Energy" and the number 680-218-9179. Thankfully, Plaintiff had not gotten the chance to take this call, but like the others, the call was "abandoned".

35. Unfortunately, this is not the first case of Choice Energy violating the TCPA.

12

Notably, Company is the subject of a complaint before the Pennsylvania Public Utility Commission, under docket C-2016-2581006. In that case, Administrative Law Judge Martha Guhl found that Choice, "failed to stop the marketing calls and place [the] telephone number on a do not call list," and imposed penalties.

36. As more fully outlined above, Defendants refused numerous times to place Plaintiff on their do-not-call list or provide Plaintiff a copy of their do-not-call policy. It is reasonable for Plaintiff to assume, based on these refusals, that Defendants evidently do not have such lists or policies, due to their failure to honor such requests not to be contacted.

37. Moreover, in a case previously filed and subsequently voluntarily dismissed by Plaintiff without prejudice in the Court of Common Pleas of Montgomery County Pennsylvania, case number 2017-28953, Defendants *admitted* to placing the *very same* calls in question, *admitted* to using an Automatic Telephone Dialing System to make such calls, and did not provide any evidence to substantiate that Defendants maintain or have an internal do-not-call list or policy.

38. Plaintiff received the calls on his private VOIP telephone, for which he is charged for the call, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

39. These facts, subsequent facts, the geographic distance between the Plaintiff and the Defendant, as well as the fact that this call was part of a nationwide telemarketing campaign demonstrate that the call was made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

40. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone

13

number assigned to… any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii). As stated immediately above, the calls were placed using an automatic telephone dialing system to Plaintiff's private VOIP telephone line, on which he is charged for the call.

41. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

42. The action of terminating a call made by automatic "robodialers," or calls placed using an automatic telephone dialing system, before the called party or a voicemail system answers the call, is termed as "call abandonment" and is highly illegal. 47 CFR 64.1200(a)(7) states that it is illegal to "Abandon more than three percent of all telemarketing calls that are answered live by a person" and states that "A call is "abandoned" if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting." In such a case, 47 CFR 64.1200(a)(7)(i)(A) indicates that abandoned calls must provide, among other requirements, "A prerecorded identification and opt-out message that is limited to disclosing that the call was for "telemarketing purposes" and states the name of the business, entity, or individual on whose behalf the call was placed."

43. As stated above, the abandoned calls did not provide the identification information required under 47 CFR 64.1200(a)(7)(i)(A). Moreover, 15 of the 19 calls, or 79%, that Plaintiff received were abandoned. This percentage is well in excess of the 3% overall "safe harbor" limit of 47 CFR 64.1200(a)(7), and the actual amount of abandoned calls in Company's illegal telemarketing campaign is likely to be revealed to be much higher than the 3% limit upon discovery. Additionally, as stated above, once Plaintiff's voicemail answered, as in subsequent calls, the calls were abandoned as hang-up calls.

14

44. Plaintiff was harmed by the calls. He was temporarily deprived of legitimate use of his phone because his phone line was tied up, he was charged for the calls and his privacy was improperly invaded. Moreover, the calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

45. As a point of fact, to the extent that "consent" was supplied during the calls, that was done in order to discover the identity of the caller and for no other reason. Courts have held this to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call."

46. Plaintiff adequately confirmed corporate identity for each and every call so as to establish liability of Defendants, as more fully outlined above.

47. These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

48. Plaintiff did not provide any one, more, or all Defendants, nor any agent of Defendants, prior express written consent, or any other form of consent, express or implied, to cause Plaintiff to receive telephone calls on his personal telephone that utilized an "automatic telephone dialing system" to transmit a message or make calls.

49. Plaintiff had no prior business relationship with any one, more, or all of Defendants.

50. The telephone Sales Call therefore violated 47 U.S.C. § 227(b)(1)(A), 47

15

U.S.C. § 227(c)(3)(F), 47 CFR 64.1200(a)(7), 47 CFR 64.1200(d)(1), 47 CFR 64.1200(d)(3), 47 CFR § 64.1200(a)(1)(iii), 47 CFR § 64.1200(a)(1), and 47 C.F.R. 64.1200(c)(2).

## V.    Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

51. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

52.  As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

53. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

54. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

55. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

56.  Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Third Cause of Action

16

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

57. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

58. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

59. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

60. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

61. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

62. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fifth Cause of Action

(Negligent Violation of the TCPA "Call Abandonment"
Prohibition, 47 CFR 64.1200(a)(7))

63. Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

64. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(a)(7) Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Call Abandonment" Prohibition, 47 CFR 64.1200(a)(7))

65. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

66. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(a)(7), Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

67. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

68. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

69. Plaintiff incorporates and realleges, as though fully set forth herein, each of the

18

paragraphs above.

70. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### Ninth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

71. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

72. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Tenth Cause of Action
(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

73. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

74. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

**WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:**

### VI.    Prayer for Relief

On Causes of Action 1-10:

19

1. For awards of $500 for each negligent violation as set forth in actions 1-10;

2. For awards of $1,500 for each knowing/willful violation as set forth in actions 1-10.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

Total statutory damages: : **$136,500** (Nineteen counts each of: sales call, ATDS call, failure to put Plaintiff's number on Defendants' Do-Not-Call list, and failure to provide Plaintiff a copy of Defendants' Do-Not-Call policy, at $500 per count of each, with treble damages for each, plus 15 counts of call abandonment at $500 per count of each, with treble damages for each, as calculated in section VI.)

4. Punitive damages to punish Defendants for their willful, illegal, and deliberate tortious conduct and to deter others who may otherwise engage in similar willful illegal and deliberate tortious conduct;

5. Prejudgment interest at the maximum legal rate;

6. Costs of suit herein incurred; and

7. All such other and further relief as the Court deems proper.

### VII.   **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: **February 9, 2018**

/s/

Andrew Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

20